Charles Solomon, M.
The complaint herein charging disorderly conduct was dismissed on the People’s case for insufficiency of proof. According to the arresting officer, patrolman Joseph Curry, 2d division, “ on March 21, 1958, at 2 a.m. in front of 10 St. Marks place, Benito Feliciano, the defendant, committed the offense of disorderly conduct in violation of section 722, subdivision 8, of the Penal Law, in that with intent to provoke a breach of the peace and under circumstances whereby a breach of the peace might be occasioned, did loiter thereat for the purpose of committing a lewd or indecent act, in that he did approach and engage the deponent in conversation and did offer to give a drink to deponent if he would come to defendant’s house and that he would do anything for deponent that he wanted, and when asked what he meant, the defendant did place his right hand on the covered private parts of deponent, and said ‘ I’ll give you..................’ [exact language is omitted because of its obscenity]. After being placed under arrest, defendant said 'I thought you were my friend. ’ ”
A turkish bath is located at 10 St. Marks Place. The police officer testified as set forth in the complaint, amplifying that the transaction was exclusively between him and the defendant, that he had never seen the defendant before, that the whole Occurrence took ‘' approximately a minute or two ’ ’, that it was *838 in an ordinary conversational tone of- voice, that nobody stopped to look and listen while it was going on, that the defendant did not speak loud' or boisterously and that he was rather friendly, and that after this brief and friendly conversation which lasted a couple of minutes, no one else being present, the policeman identified himself and placed the defendant under arrest, and that the foregoing was the whole story. In dismissing the complaint the court said to the police officer: “ I am dismissing this complaint not because I doubt what you said. I believe what occurred is as you testified. I am granting the motion to dismiss this complaint because this defendant is not charged with sexual deviation, not with indecency or lewdness. He is charged with disorderly conduct which can only occur if and when the defendant acts with intent to provoke a breach of the public peace or behaves in a manner whereby the public peace is breached or may be breached. Also, the law is that a police officer is a peace officer charged with the preservation of the public peace. This transaction was entirely between you and this defendant; as you said, a friendly conversation. Surely, this defendant did not intend to breach the public peace. He did not want to attract public attention. Had he known you were a policeman he would have had nothing to do with you. And so, notwithstanding the fact that I do not doubt you told the truth, I am required to dismiss this complaint, the law under which this prosecution occurs being what it is.”
Subdivision 8 of section 722 of the Penal Law reads:
“Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:
'‘ 8. Frequents or loiters about any public place soliciting men for the purpose of committing a crime against nature or other lewdness ”.
The disorderly conduct statute is concerned exclusively with the preservation of the public peace. (People v. Perry, 265 N. Y. 362; People v. Chesnick, 302 N. Y. 58; People v. Tinston, 6 Misc 2d 485.) Subdivision 8 of section 722 seems to say that as far as its purpose is concerned, one may indulge in the kind of behaviour ascribed to this defendant, that he may frequent or loiter about any public place soliciting men for the purpose of committing a crime against nature or other lewdness, provided this is not done with intent to provoke a breach of the public peace or whereby a breach of such peace may be occasioned. The statute is not aimed at sex deviation as such — ‘ ‘ degeneracy ’ \ If the suppression of the evil indicated in *839 subdivision 8 is sought to be accomplished this type of prosecution is inadequate. Ordinary common sense at once suggests that the defendant in this type of case would not entertain any intention to breach the public peace and that to cause such a breach would be just about the farthest thought from his mind. Yet we go right on, as we have been doing as far back as this court can remember, with this kind of arrest and prosecution. Which illustrates again the ‘ ‘ increasing tendency to employ section 722 whenever it is determined a person should be arrested.” (People v. Swald, 190 Misc. 239, 241; People v. Tinston, supra, p. 488.) If it is our purpose to strike directly at the persons and the practices envisioned by subdivision 8, we have only to make the law adequate. This court has repeatedly brought this situation to the attention of the legal bureau of the New York City police department as well as to the offices of two of the District Attorneys of this city. He initiated the introduction of a bill in the last session of the State Legislature which would have added to the Penal Law section 722-c entitled “ Acts of lewdness or indecency” and which provided that any person who in any public place invites or solicits another to engage or participate with him in an act or acts of lewdness or indecency shall be deemed guilty of disorderly conduct. (Assem. Int. No. 73, Pr. No. 73 [1958 Sess.].) If this were the law, then in this type of prosecution we would not be confronted with the frame of limitation contained in the preamble to section 722; nor would we be concerned with overcoming such other hurdles as are represented by the words frequenting, loitering, soliciting, each of which has a well-defined legal and lexicographic meaning. The court repeats — if the suppression of the indicated evil is the objective, prosecution under subdivision 8 of section 722 interposes legal barriers extremely difficult, if not impossible to surmount, as this case exemplifies. The personal abhorrence upon the part of the court for the conduct attributed to the defendant — and his name is legion — is altogether beside the point. This is not a contest between the court and the defendant. It is a prosecution by the People of the State of New York under a specific statute. No case justifies stretching a penal statute to fit the facts. No conviction can be justified unless the facts fit into the statute. We may not predicate gliilt on the basis of personal aversion, revulsion or detestation. Justice under law is objective and impersonal (People v. Humphrey, 111 N. Y. S. 2d 450, 455.) The courts traditionally and consistently condemn strained construction. (Shenwin v.. People, 100 N. Y. 351 [1885]; and technical construction, People ex rel. Murray *840 v. Becker, 78 Misc. 666 [1912]; People v. Pestronk, 3 Misc 2d 845.) The law is concerned with the promotion of justice (General Provisions, General Rules of Construction, Penal Law, § 21). The United States Circuit Court of Appeals for the Second District in the case of United States v. Miranti (253 F. 2d 135) unanimously reversing contempt convictions, enunciated the basic and inspiring principle that the law’s protection is for the despicable as well as for the admirable. And while to some this may be a “ small ” case — which most decidedly it is not, especially since it can be fraught with dire consequences for an accused — “ small cases ” as is pointed out by Mr. Justice Frankfurter in a dissenting opinion in Staub v. City of Baxley (355 U. S. 313, 325) “that carry large issues ”. (See, also, People v. Tinston, 6 Misc 2d 485, 491, supra.) Can it be said that this defendant frequented or loitered? Not if we are to respect definitions of these words found in standard sources. According to Funk and Wagnalls New Standard College Dictionary the verb “ frequent ” means “ to visit or repair to often; resort to habitually ”. According to the same sources, ‘ ‘ loiter ’ ’ means ' ‘ To linger idly along the way; spend time idly; he dilatory; delay.” And Funk and Wagnalls New Standard Dictionary of the English Language adds to the former ‘ ‘ as, pickpockets frequent crowds ’ ’ and to the latter “To travel indolently with frequent intermissions; as we loitered down the Rhine.” (See, also, Webster’s New International Dictionary [2d ed.].) In the Rubaiyat of Omar Khayyam, the tentmaker tells us: “ Myself when young did eagerly frequent Doctor and Saint.” In Green v. State (109 Ind. 175) it was held that evidence that the defendant was in a gambing house on one occasion was not sufficient to sustain a conviction for frequenting a place where gambling was permitted. And in State v. Sam (14 Ore. 347) in which the defendant was charged with unlawfully frequenting an opium den for the purpose of smoking opium, etc., it was held that the word frequent undoubtedly requires more than one visit to constitute the offense — how many, the court was unable as a matter of law to determine. (See 17 Words and Phrases, p. 690; also 14 American and English Encyclopedia of Law [2d ed.], p. 551.) In Stephens v. District of Columbia (16 D. C. App. 279, 281) the court held that in a prosecution under an ordinance providing that vehicles for hire seeking employment shall not stop or loiter on any public street, etc., that the mere fact that a person drove his vehicle slowly along the streets, and turned and returned upon the same street, did not necessarily constitute loitering in the sense of the law. (See, also, 25 Words *841 and Phrases, pp. 589, 590, 591; People v. Humphrey, 111 N. Y. S. 2d 450, 455, supra; People v. Bell, 306 N. Y. 110, 113.) In the afore-mentioned standard sources we find the following definition of solicit: “ To ask for earnestly; to seek to obtain by persuasion or entreaty; make entreaty. To beg of persistently; to implore, beseech, tempt; specifically, to entice one to an unlawful act.” The word implies importunity as distinguished from casual, friendly conversation. There is a legal and dictionary difference between invitation and solicitation. (See 39 Words and Phrases, beginning p. 614; also 81 Corpus Juris Secundum, p. 388.) Clearly, the brief and friendly conversation under the circumstances here disclosed cannot reasonably be said to come within the ambit of the foregoing definitions or authorities. Such words as the foregoing must be examined lest we go astray. (People v. Pieri, 269 N. Y..315, 322.) However, let us assume the defendant did frequent, loiter and solicit within the condemnation of subdivision 8 of section 722. It would still be necessary to prove he did so with intent to provoke a breach of the peace or whereby a breach of the peace may have been occasioned. (People v. Pieri, supra; People v. Burgwin, 9 Misc 2d 470.) And it is important to bear in mind that a police officer is a peace officer whose responsibility it is to maintain public order. It is not to be assumed he would permit or be a party to a breach of the public peace. In this case, the arrest of the defendant followed immediately upon the heels of the invitation. (People v. Tinston, 6 Misc 2d 485, supra; People v. Lukowsky, 94 Misc. 500; People v. Swald, 190 Misc. 239, supra; People v. De Stefanis, 34 N. Y. S. 2d 52.)