Charles Solomoh, M.
In this case, as in People v. Feliciano (10 Misc 2d 836) the need for revision of section 722 of the Penal Law is indicated. The complaint charges: ‘ ‘ that at 3 a.m. on April 5th, 1958, at Lefferts Boulevard station on ‘A’ train in the County of Queens, City and State of New York, the defendants Leroy Harrison and Walter Bolden, while acting together and in concert with each other, committed the offense of disorderly conduct in violation of Section 722, subdivision 6 of the Penal Law, in that with intent to provohe a breach of the peace cmd under circumstances whereby a breach of the peace might be occasioned, the defendants entered the third car of the train, Harrison seated himself next to a sleeping man and defendant Bolden stationed himself next to the door. Harrison placed his right hand inside the right jacket pocket of the sleeping man. Deponent placed the defendants under arrest.” (Emphasis supplied.)
Subdivision 6 of section 722 reads:
“ Any person who with intent to provohe a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct. (Emphasis supplied.)
“ 6. Interferes with any person in any place by jostling against such person or unnecessarily crowding him or by placing a hand in the proximity of such person’s pocket, pocketbook or handbag ’ ’.
The defendant Harrison, represented by counsel, had pleaded guilty. The defendant Bolden was acquitted. The arresting officer, a New York City transit policeman, testified that his post of observation was a “ darkened dead train ” about eight feet away, that the train in which the defendants were riding pulled into the Lefferts Boulevard terminal which was virtually deserted, that the defendants came out upon the platform where they had a discussion, that they then entered the next car where the sleeping man was; that Bolden, at Harrison’s direction, took a position in the second car from which he could observe the car from which they had come, that Harrison sat next to the intended victim and, at a signal from Bolden, put his hand under the coat of the former, and that he saw Harrison tug at the inside pocket. The arrest followed promptly. The sleeping man did not awaken. The court said in substance that notwithstanding he believed the testimony of the People’s witnesses the record required acquittal of the defendant Bolden. (People *447 v. Feliciano, supra.) These defendants are not charged with being thieves. They are charged with the offense of disorderly conduct and section 722 is concerned exclusively with the preservation of the public peace. (People v. Harvey, 307 N. Y. 588; People v. Perry, 265 N. Y. 362; People v. Chesnick, 302 N. Y. 58; People v. Pieri, 269 N. Y. 315; People v. Tinston, 6 Misc 2d 485; People v. Feliciano, supra.) In People v. Harvey (supra, p. 590) it was said: “ The substance of section 722 is that the acts charged must be such as are public in character and breach the peace, or tend so to do ’ ’. In People v. Pieri (supra, pp. 321-322), reversing judgments of conviction under subdivision 11 of section 722, Chief Judge Crane said: “First, The People must prove an intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned. What is a breach of the peace ? ‘ It is a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community. ’ (People v. Perry, 265 N. Y. 362, 364.) ”
What transpired here was in the early hours of Saturday morning. One strongly suspects the sleeper had been imbibing. It may be said he might have awakened and offered resistance. Such an occurrence would have been confined to him and the defendant Harrison, in a subway car that was unoccupied except for the defendants and the sleeping man, at about 3 o’clock in the morning, at a practically deserted terminal station, with the transit police eight feet away. The statute is concerned not with remote possibility but with immediate likelihood; not with speculation but with probability. When the transit police decided the time had come for them to act, the defendants were placed under arrest, thus eliminating the likelihood of a breach of the public peace. It would be unrealistic to attribute to these defendants an intent to breach the public peace and the story here detailed does not disclose conduct and circumstances whereby a breach of the peace may have been occasioned. Surely, it cannot be said that we have here “‘a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community. ’ ” Common sense at once suggests that this type of law breaker would not want to attract attention to himself or cause commotion of any kind. Stealth, furtiveness, unobstrusiveness, precaution characterized the defendants in their maneuvers. The arresting officer had chosen an inconspicuous place in which to conceal himself and from which to observe. Unless language is to be denied its plain meaning, subdivision 6 of section 722 *448 seems to say that one may “interfere (s) with any person in any place by jostling against such person or unnecessarily crowding him or placing a hand in the proximity of such person’s pocket, pocket book or handbag ’ ’ provided he does not do so with intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned. Furthermore: ‘ ‘ The most compelling criterion in the interpretation of an instrument is, of course, the language itself * * * it would be improper, to search beyond the instrument for an assumed intent.” (People v. Carroll, 3 N Y 2d 686, 689.) We may not stretch a penal statute to fit the facts. No conviction can be justified unless the facts fit into the statute. The courts condemn strained construction. (People v. Pestronk, 3 Misc 2d 845; Sherwin v. People, 100 N. Y. 351; People v. Feliciano, supra.) It should be noted that police officers are peace officers (Code Crim. Pro., § 154) and as such are charged with preserving the public peace. ‘ ‘ The Police department and force shall have the power and it shall be their duty to preserve the public peace ”. (New York City Charter, § 435.) It is not to be assumed that a police officer, who is a peace officer, would permit or participate in a breach of the public peace. (People v. Swald, 190 Misc. 239, 241; People v. Lukowsky, 94 Misc. 500; People v. Weissman, 138 Misc. 542; People v. Tinston, 6 Misc 2d 485, supra; People v. De Stefanis, 34 N. Y. S. 2d 52.) Section 722 gratuitously interposes substantial barriers to successful prosecution in this type of case as in the type of case dealt with in People v. Feliciano (supra). Common sense, it seems to this court, demands revision of section 722 in the interest of more effective enforcement of the criminal law. The tendency is to employ section 722 “ whenever it is determined a person should be arrested.” (People v. Tinston, supra, p. 488; People v. Swald, supra, p. 241.) The court can well understand frustration, if any there be, upon the part of the police in the case at bar. However, justice under law is for the despicable as well as for the admirable. (See unanimous opinion of the United States Circuit Court of Appeals, Second District, in the cases of United States v. Miranti and United States v. Bando, 253 F. 2d 135, reversing contempt convictions under which long prison terms had been imposed.) The People in this type of case should not have to prove the preliminary underlying imperatives set forth in the preamble to section 722; nor should such abhorrent miscreants as the defendants in this case be enabled by the law itself to find effective shelter behind such convenient legal ramparts. The remedy, it seems to this court, is clear, as it was in People v. Feliciano (supra). Remove subdivision 6 from its present statutory bed and make of it an *449 independant section of the Penal Law, thus relieving the People in this type of prosecution of the gratuitous burden of establishing the inescapable requirements laid down in the preamble to section 722. For instance, the Legislature could stand subdivision 6 on its own bottom, by adding to the Penal Law, say, section 722 “ c ” or “ d ”, or whatever alphabetical or other identification may be necessary, to read as follows: “ Anyone who interferes with any person in any public place by jostling against such person or unnecessarily crowding him or placing a hand in the proximity of such person’s pocket, pocketbook or handbag, or who aids or abets in the doing of the foregoing, shall be deemed to have committed the offense of disorderly conduct.” As the statute now stands, it unjustifiably handicaps the People of the State of New York. The court, of course, is bound by the law.